# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

ANDOVER HEALTHCARE, INC.,   )
                             )
          Plaintiff,   )
                             )
     v.                  )   C.A. No. 14-mc-00044-SRN-JJK
                             )
                             )
3M COMPANY,            )
                             )
          Defendant.   )
                             )

## 3M'S OPPOSITION TO ANDOVER'S PETITION
## FOR EXPEDITED DISCOVERY UNDER 28 U.S.C. § 1782

## I.     INTRODUCTION

Despite recently removing a dispute between the parties from this Court, Andover now returns, seeking highly sensitive confidential information from 3M for use in a German litigation.   But this is the *third* court Andover has asked for the same relief. *First*, the Delaware District Court (Chief Judge Stark)—the forum Andover chose for its patent dispute—denied Andover's request to use 3M's documents in Germany, citing their highly confidential nature.   *Second*, Andover asked the German court—the very court in which it seeks to use the documents—to order 3M to produce the same information.   That motion is pending and will be decided by the German court, which has the most knowledge of German law and the issues in that case.   Now, mere months after chiding 3M for "forum shopping," Andover has made this the *third* forum in which it seeks the same relief.

Moreover, Andover's claims of urgency are unsupported under German law and are baseless given that Andover waited over a decade to initiate suit, waited months further to seek discovery in any court, and then waited nearly six more weeks after Judge Stark's adverse ruling to file this 1782 Petition.   For these and the reasons set forth below, its Petition should be denied.

## II.     BACKGROUND FACTS

For more than a decade, 3M has been selling its "Coban" latex-free bandages in the United States and Germany.   These products are made with a synthetic rubber copolymer, hydrocarbonated resin tackifier, and other ingredients.   Declaration of Brent Ashton ("Ashton Decl.") ¶ 4 Ex. A.   Not surprisingly, the specific synthetic rubber

copolymer and hydrocarbonated resin tackifier of each product are ***highly sensitive*** 3M trade secrets.  *Id.* ¶¶ 4-5.  Their disclosure, which Andover now seeks, would irreparably harm 3M.  Ashton Decl. ¶¶ 6-9.  It would allow any of 3M's competitors, including multiple overseas competitors from China and other countries, to knock off 3M's highly successful products.  *Id.*

In May 2013, Andover, a long-time competitor of 3M, filed suit in the District of Delaware,[1] alleging that the Coban™ latex-free products infringed a patent issued to Andover more than 10 years earlier.  Andover then also filed a related infringement action against 3M in Germany on a related and similarly old European patent.  Andover Petition ("Pet.") Ex. 2, 3.  In both instances, the asserted patents claim "[a] cohesive product comprising  . . . [1] an inherently crystalline elastomer and [2] at least one tackifying agent [3] in an amount effective to disrupt the crystalline structure of the elastomer and [4] maintain the elastomer in a partial polycrystalline state . . . ."  *Id.* Ex. 1 at 10; U.S. Patent No. 6,156,424, claim 1.

Andover contends it met its Rule 11 obligations prior to filing the District of Delaware infringement action.  Declaration of Felicia Boyd ("Boyd Decl.") Ex. 1.  Any

---

[1]  3M sought to move the dispute with Andover to this District, as a June 2010 settlement agreement required resolution of at least some aspects of the dispute in this Court and under Minnesota law.  *See* Complaint, *3M Co. v. Andover Healthcare, Inc.*, No. 13-1741 (D. Minn. July 3, 2013).  Andover amended its District of Delaware patent infringement complaint to exclude pre-June 2010 sales and successfully argued against having the dispute heard by this Court.  *See* First Amended Complaint, *Andover Healthcare, Inc. v. 3M Co.*, No. 13-0843 (D. Del. July 5, 2013).  In its opposition to 3M's motion to transfer the Delaware case to Minnesota, Andover argued that the District of Delaware was an appropriate forum and more convenient for Andover's representatives and its attorneys.  *See* Andover's Answering Brief in Opposition to 3M's Motion to Transfer, *Andover Healthcare, Inc. v. 3M Co.*, No. 13-0843 (D. Del. Aug. 29, 2013).  Only now, after receiving an unfavorable discovery decision by the Delaware court, Pet. Ex. 11, does Andover return to this Court.

such investigation should have provided a basis for Andover to assert that 3M's commercially available Coban™ products meet the claim limitations, including those directed to specific components and their crystallinity. This investigation would have necessarily been without access to 3M's confidential trade secrets that Andover now seeks for use in Germany.

To defend against Andover's claims in Germany, 3M submitted, in March 2014, an expert report with crystallinity tests conducted in Germany. *See* Pet. Ex. 7. The report included tests on 3M's accused, ***commercially available*** Coban™ products—a fact entirely omitted in Andover's § 1782 Petition. 3M's tests revealed that these products do not infringe because the synthetic rubber copolymer is not maintained "in a partial polycrystalline state" as required by the patents. *Id.* Ex. 7 at 11, 17. These results are dispositive of non-infringement, and prove that Andover had no basis for its lawsuits, either in the United States or Germany.

3M also provided these results to Andover in the District of Delaware, where they are equally dispositive of non-infringement. Although Andover has not relied on any crystallinity testing in either forum—presumably having either decided not to test 3M's commercial product or tested and found it to be non-crystalline—Andover requested further information from 3M. *See* Boyd Decl. Ex. 2. In response to this request, 3M produced to Andover's outside counsel certain 3M confidential information, it designated confidential under Delaware Local Rule 26.2.[2] Andover's counsel, however, did not

---

[2] D. Del. L.R. 26.2 ("Confidentiality. If any documents are deemed confidential by the producing party and the parties have not stipulated to a confidentiality agreement, until such an agreement

respect the Confidentiality designation and instead disclosed 3M's confidential information to one or more unnamed persons within Andover. *Id.* Ex. 3. Andover did this unilaterally, without seeking leave from the Delaware court or asking 3M. The full extent of the violation is not yet clear, as Andover's counsel has thus far refused to identify specifically to whom the information was disclosed or what—if any—efforts it has taken to recover and protect 3M's confidential information. *Id.*

3M's German expert also tested the crystallinity of 3M's highly confidential raw materials. Pet. Ex. 7 at 10-12. Ignoring that 3M's commercial product does not contain an elastomer maintained in a "partial polycrystalline state," Andover's § 1782 Petition focuses on the raw material testing. While 3M disagrees with the conclusions drawn from the extensive technical arguments in Andover's Petition,[3] they show that Andover does not need 3M's confidential information to make its argument that "3M's test results cannot be correct." *Id.* at 4.

As discussed above, Andover has already twice sought the 3M trade secret information addressed in its § 1782 Petition. First, Chief Judge Stark in the District of Delaware, Andover's chosen U.S. forum, denied Andover's request, noting the sensitivity to 3M of the information Andover seeks to use in Germany, and noting the availability of other mechanisms, such as a § 1782 petition or a request to the German court. *Id.* Ex. 11.

---

is in effect, disclosure shall be limited to members and employees of the firm of trial counsel who have entered an appearance and, where appropriate, have been admitted pro hac vice. Such persons are under an obligation to keep such documents confidential and to use them only for purposes of litigating the case.").
[3] Attempts to graft an inherent crystalline structure onto all polychloroprenes under all circumstances based on elastomer behavior at subzero temperatures are particularly misguided.

Indeed, there is no dispute that the protections available in U.S. courts to prevent the disclosure of a party's highly confidential business information do not exist in German courts. *Id.* at 13; *see also* Declaration of Olaf Giebe ("Giebe Decl.") ¶¶ 7-9. If 3M's confidential information is used in Germany, there are no assurances it can be protected from access by 3M's competitors, either third parties or in-house Andover personnel. *See* Giebe Decl. ¶¶ 7-9.

Then, the day after the Delaware court denied Andover's discovery request, on June 30, 2014, Andover requested the same discovery from the German court. The German court will consider Andover's discovery request at the September 5, 2014, hearing and will decide whether the information is necessary for proving infringement. *Id.* ¶¶ 4-6. If the information is not deemed necessary, the German court will deny the request. *Id.* ¶ 4.

Finally, Andover filed the present Petition. But despite the fact that Judge Stark specifically identified § 1782 as a potential discovery mechanism in his June 29, 2014, decision, Andover delayed a nearly *six weeks* before filing its petition. Moreover, instead of filing its Petition in Delaware, where 3M is incorporated and unquestionably "resides" and is "found" for purposes of Section 1782, it filed instead in this forum, apparently hoping it would have better luck in a new forum. For the reasons below, its Petition should be denied.

## III.  ARGUMENT

### A.  This Court Should Deny Andover's Request, Which Seeks to Circumvent the German and Delaware Courts, and Risks Irreparable Harm to 3M

This Court should deny Andover's last-minute request to obtain documents containing 3M's highly confidential trade secrets for use in the German proceedings. Andover's § 1782 Petition improperly seeks to circumvent the authority of both the German court and its chosen U.S. court, and risks causing irreparable harm to 3M.

Separate from whether Andover meets the threshold statutory requirements to apply for judicial assistance under § 1782, it is not entitled to its requested discovery. As the Supreme Court has cautioned, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). Under the *Intel* factors, Andover's Petition should be denied.

### 1.  3M Is a Party to the Germany Suit and Thus the Discovery Sought by Andover Is Not Inaccessible Absent Section 1782

The first *Intel* factor considers whether the party from whom discovery is sought is a participant in the foreign proceeding. *Intel*, 542 U.S. at 264. As Andover admits, this factor weighs *against* granting the Petition because 3M is a party in the German suit and subject to the German court's jurisdiction. Pet. at 9 ("[I]f a foreign court can itself order the requested discovery, this factor weighs against the granting of discovery."); *see Intel*, 542 U.S. at 264 ("When the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it

ordinary is when evidence is sought form a nonparticipant.").  Indeed, the German court

may order 3M "to produce whatever evidence their laws require."  *Via Vadis Controlling*

*GmbH v. Skype, Inc.*, No. 12-0193, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013).

Andover claims that the limited scope of German discovery automatically turns

this factor in its favor.  Pet. at 9.  To the contrary, courts have found that the first *Intel*

factor counsels *against* compelling discovery from a party to a German proceeding even

if the alleged limited scope is taken as true.  *Via Vadis*, 2013 WL 646236, at *2 (denying

discovery pursuant to § 1782 from a party to the German proceeding); *In re Application*

*Eurodiagonstica A.B.*, No. 09-0755, (S.D. Cal. Aug. 11, 2009) (same).

Andover's cited cases are inapposite.  First, Andover relies on case law addressing

discovery from a *non-party* to the German proceeding.  Pet. at 9 (citing *Kulzer v.*

*Esschem, Inc.*, 390 Fed. Appx. 88 (3d Cir. 2010)).  Specifically, in *Kulzer*, petitioner

Kulzer requested discovery from a *non-litigant*, Esschem, Inc., outside the German

court's jurisdictional reach.  *Id.* at 89-90.  The Third Circuit granted the discovery,

explaining that "[Kulzer]'s application to the federal court with jurisdiction over non-

party Esschem is arguably more compelling than if it were seeking party discovery."  *Id.*

at 92.  And while *Cryolife, Inc. v. Tenaxis Med., Inc.* involved a party to the foreign suit,

the court faced competing declarations regarding whether the German court could compel

the requested discovery.  The court thus concluded that "[u]nder the circumstances

presented, this [first *Intel*] factor does not clearly weigh in favor of either party."  No. 08-

5124, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009); *see also Servicio Pan Americano*,

354 F. Supp. 2d 268, 274-75 (S.D.N.Y. 2004) (concluding that the requested discovery

7

may not be ordered by the Venezuelan court absent detailed information about the nature and extent of the documentation).

Here, Andover claims that "document requests in Germany are usually unsuccessful," but has submitted no evidence supporting this allegation or that the German court in Mannheim could not compel from 3M the specific documents Andover requests here.  Pet. at 10.  To the contrary, the typical problem with German document requests—that the document must be described or specified—is not present in this case as Andover can (and does) specify in its request the exact documents it seeks.  Giebe Decl. ¶ 5.  The German court before whom Andover's discovery request is properly pending will authorize the discovery if it is deemed necessary.  *Id.* ¶ 4.

Because 3M is a party to the German proceeding for which Andover seeks discovery under § 1782, the first factor favors 3M.  *See Intel*, 542 U.S. at 264.

### 2.    Andover's Petition Attempts to Circumvent the Proof-Gathering Restrictions in the German Proceeding

The second and third *Intel* factors consider the receptiveness of the foreign court to the discovery sought and whether the § 1782 discovery request conceals an attempt to circumvent the foreign jurisdiction's proof-gathering restrictions.  *Id.* at 264-65.  These factors also weigh against granting Andover's Petition.

3M is a party to the German proceeding for which Andover seeks discovery, yet Andover comes to this Court after belatedly seeking discovery from 3M in the German court.  Should the German court ultimately deny Andover's discovery request, granting Andover's Petition would improperly circumvent the German court's judgment.  *See Via*

*Vadis*, 2013 WL 646236 at *2 (Where a foreign tribunal has jurisdiction over a party and does not require discovery, "[d]iscovery under § 1782 would be, in essence a circumvention of the foreign courts' rules and enforcement procedures."); *see also John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 136 (3d Cir. 1985) ("Concern that foreign discovery provisions not be circumvented by procedures authorized in American courts is particularly pronounced where a request for assistance issues . . . from an individual litigant.").

Not surprisingly, previous attempts to use § 1782 to circumvent German discovery requests have been rejected by other district courts.  In *In re Application of Kreke Immobilien KG*, the court explained that "[i]t would create a perverse system of incentives—one counter to the efficiency and comity goals of § 1782—to encourage foreign litigants to scurry to U.S. courts to preempt discovery decisions from tribunals with clear jurisdictional authority."  No. 13-110, 2013 WL 5966916, at *6 (S.D.N.Y. Nov. 8, 2013).  The court thus concluded, "In light of the overwhelmingly German character of Kreke's discovery application, we are loath to sanction forum shopping under the guise of § 1782." *Id.*

Andover's cited cases do not support its exhaustion argument.  In each case Andover cites, § 1782 was either the only way to obtain discovery against a *non-party* or the most efficient mode for obtaining the discovery sought against the patentee who initiated the litigations.  In *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, the applicant had exhausted all discovery options in Germany against a non-litigant to the proceeding for which discovery was sought, making § 1782 the only discovery option.

9

No. M19-88, 2006 WL 3844464, at *7 (S.D.N.Y. Dec. 29, 2006); *see also In re Imanagement Servs., Ltd.*, No. 05-89, 2005 WL 1959702, at *5 (E.D.N.Y. Aug. 16, 2005) ("[I]it is unclear whether the Russian court has the authority to order discovery from non-parties who reside outside the court's jurisdiction, and resort to § 1782 may be the only avenue by which Imanagement can obtain the discovery it seeks.").  In this case, Andover has pending discovery requests in the German court against 3M.  And in *In re Application of Procter & Gamble Co.*, the applicant sought discovery from a patentee that had brought infringement suits against it in multiple foreign jurisdictions.  334 F. Supp. 2d 1112, 1115 (E.D. Wis. 2004).  Weighing the first *Intel* factor, the court rejected the patentee's argument that the applicant should be required to exhaust its discovery opportunities in those proceedings, concluding that "on the facts of the present case, granting P & G's request is a more sensible way of addressing discovery."  *Id.* at 1116.

In this case, Andover's delay is the reason that the German court has not yet ruled on Andover's discovery request.  Andover's German action has been pending since December 18, 2013, but Andover did not request discovery until June 30, 2014.  Giebe Decl. ¶¶ 3-4.  At the September hearing, the German court, which is delving into the merits of Andover's infringement claims, will grant Andover's request if it believes the discovery is necessary to Andover's case.  *Id.* ¶ 4.  Had Andover made its request earlier, the German court could have ruled on the request before the merits hearing.  *Id.* ¶ 6. Andover should not be permitted to benefit from its own delay to circumvent whatever proof-gathering restrictions the German court may impose.  *See Via Vadis*, 2013 WL 646236 at *2.  After all, it is the German court that is most knowledgeable about German

law and discovery procedures. And it is the German court that is most knowledgeable about the facts of its case, and the asserted relevance of the requested materials to the issues before it. Thus, this is an issue that should be resolved in Germany, not Minnesota.

The second and third *Intel* factors thus weigh against granting Andover's petition.

### 3. Andover's Discovery Is Unduly Intrusive as it Seeks Highly Confidential 3M Trade Secrets Not Adequately Protected from Disclosure in the German Proceeding

The final *Intel* factor—whether the request is unduly intrusive or burdensome— weighs *heavily* against Andover. *Intel*, 542 U.S. at 265. Andover's requested discovery would force 3M to produce its most sensitive technical information for use in a jurisdiction without the proper safeguards against disclosure. *See Via Vadis*, 2013 WL 646236 at *3 (holding that production of highly sensitive source code and related core technical documents was a heavy burden, counseling against granting the discovery request). It would place 3M's proprietary secrets at risk of being made known not only to its competitor Andover, but to competitors worldwide, who could use this information to knock off 3M's products.

Andover's claims that 3M's confidentiality concerns can be mitigated by a protective order in *this action* are inaccurate. Pet. at 13. In the *German action*, few procedures exist to ensure that the submitted documents, or any information contained therein, will be protected from access by 3M's competitors. Giebe Decl. ¶¶ 7-9. First, German procedural law does not have a generally accepted mechanism to limit access to parts of the case file to attorneys. *Id.* ¶ 7. Rather, parties to the lawsuit, and thus in-house

11

Andover personnel, have a constitutional right to access any document made part of the file. *Id.* While Andover agrees to use the discovery for purposes of the German action only, Pet. at 13, this rings hollow in light of its failures to respect 3M's confidentiality designations under the District of Delaware Local Rules.[4]

Second, despite Andover's assurances, third parties may be granted the right to inspect the court files, depending on a balance of interests, which is in the German court's discretion. *Id.* ¶ 8. For example, third parties with a genuine interest may be permitted to inspect the entire court file. *Id.* Interested parties may include 3M competitors that receive a warning letter based on Andover's patent, and inspection of the entire file may be granted with no recourse to prevent further use of the information in court. *Id.* Moreover, if a third party with a legal interest intervened in the German action, German procedural law would grant the intervening party the constitution right of full file inspection. *Id.* ¶ 9.

Finally, though Andover agrees to request that the German court exclude from its decision any reference to 3M's confidential information, Pet. at 13, German courts infrequently grant such requests. *Id.* ¶ 10. Moreover, this ignores that German patent infringement hearings, like the upcoming September hearing, are typically open to the public. *Id.* To fully protect trade secrets in the oral hearing under the German procedural

---

[4] As discussed above, Andover's counsel disclosed to Andover in-house personnel confidential 3M information designated as outside counsel eyes only under Delaware Local Rule 26.2. Andover's counsel did this of their own accord, without seeking leave from the District of Delaware or consent from 3M. To date, Andover has refused to identify what—if any—steps it has taken to recover or protect the information 3M designated as confidential, or even the number or names of the Andover personnel who were given the confidential information.

code, a party would have to make three separate motions—one for the hearing itself, a second for the rendering of the grounds of the judgment, and a third to oblige the persons present in the hearing to keep the facts confidential—all decided at the court's discretion. *Id.* Agreement by Andover simply cannot mitigate the risk of disclosure. *See Cryolife*, 2009 WL 88348, at *5 (granting discovery when the parties agreed that the requester would not use the documents in the foreign action until it first obtained a ruling from the German court that the materials would be keep confidential).

The risk of disclosure should be weighed against the lack of any real need by Andover for the discovery it seeks. Andover can at any time repeat and seek to "debunk" the crystallinity tests 3M performed on its accused, commercially available Coban™ products. Yet, despite the requirements under Rule 11 requiring Andover to conduct a good faith investigation prior to filing its infringement action in the District of Delaware, *see Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004), Andover has offered no crystallinity testing in either the United States or Germany. Andover can also attack 3M's raw material testing with the same misguided technical arguments it advances in support of its Petition. Thus, despite Andover's claims to the contrary, Pet. at 13, the documents it seeks are not essential to the fair and efficient resolution of the German action. Moreover, should the German court conclude after weighing each party's arguments that the documents are in fact necessary, that court has jurisdiction over 3M and the documents deemed necessary can be produced without the need for this Court's expedited intervention. Giebe Decl. ¶ 4.

**B.    If Not Denied, Andover's Petition Should Be Transferred to Delaware**

If Andover's Petition is not outright rejected, this action should be transferred to the District of Delaware in view of that court's familiarly with the underlying issues.

Again, this is the third court Andover has asked leave to use 3M's highly confidential information in its related German infringement suit.  Chief Judge Stark of the District of Delaware first addressed—and rejected—Andover's requests to use these same documents, noting the sensitivity of the information Andover sought to use in Germany.  Only then did Andover request discovery from the German court, which will rule on that request at the September hearing.  Then, Andover waited nearly six weeks before filing the present Petition.

Because of the Delaware court's familiarity with the underlying issues, Andover's Petition should, if not rejected, be transferred to the District of Delaware for consolidation with Andover's infringement action.  *See, e.g.*, *Navigation GmbH v. Chrysler Group L.L.C.*, No. 11-921 (D. Del. Mar. 20, 2013) (ordering sua sponte transfer under the court's "inherent authority to manage its own docket").

**IV.    CONCLUSION**

For the foregoing reasons, the Court should deny Andover's Petition for Expedited Discovery Under § 1782.


Date:  August 21, 2014                    By: s/Felicia J. Boyd
                                              Felicia J. Boyd (MN #186168)
                                              BARNES & THORNBURG LLP
                                              225 South Sixth Street, Suite 2800
                                              Minneapolis, MN 55402
                                              Telephone: (612) 333-2111

14

Facsimile: (612) 333-6798
felicia.boyd@btlaw.com

Michael A. Morin (*admitted pro hac vice*)
Casey Dwyer (*admitted pro hac vice*)
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400
michael.morin@finnegan.com
Casey.Dwyer@finnegan.com

**ATTORNEYS FOR DEFENDANT
3M COMPANY**

MIDS01 719485v1

15