UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Andover Healthcare, Inc., <br><br> Petitioner, <br><br> v. <br><br> 3M Company, <br><br> Respondent. | Civil No. 14-mc-44 (SRN/JJK) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

David Brafman, Akerman LLP, 777 South Flagler Drive, Suite 1100, West Tower, West Palm Beach, Florida 33401; and Scott A. Benson, Briol & Associates, PLLC, 3700 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota 55402, for Petitioner.

Felicia J. Boyd, Barnes & Thornburg LLP, 225 South Sixth Street, Suite 2800, Minneapolis, Minnesota 55402; and Michael A. Morin and Casey L. Dwyer, Finnegan Henderson Farabow Garrett & Dunner LLP, 901 New York Avenue NW, Washington DC 20001-4413, for Respondent.

SUSAN RICHARD NELSON, United States District Judge

## I.   INTRODUCTION

This matter is before the Court on Petitioner Andover Healthcare, Inc.'s Objections [Doc. No. 28] to the Magistrate Judge's August 26, 2014 Order denying Andover's Petition for Expedited Discovery Under 28 U.S.C. § 1782. Respondent 3M Company filed an Opposition [Doc. No. 29], and the matter was heard via teleconference on October 3, 2014. For the reasons set forth below, this Court overrules Andover's objections and affirms the Magistrate Judge's Order.

## II.     BACKGROUND

Andover Healthcare, Inc. and 3M Company each make and sell latex-free bandages in the United States and Germany. (See Andover's Pet. for Expedited Discovery Under 28 U.S.C. § 1782 [Doc. No. 1] ("Andover's Pet."), at 2–3; 3M's Opp. to Andover's Pet. [Doc. No. 17] ("3M's Opp."), at 1–2.) Andover's latex-free bandage products are protected by both a U.S. patent and a European patent. (See Andover's Pet., at 2; Brafman Decl. [Doc. No. 2], ¶ 2 & Ex. 1.) In May 2013, Andover filed a lawsuit in the U.S. District Court for the District of Delaware, alleging that 3M's latex-free bandage products infringed its U.S. patent. See Andover Healthcare, Inc. v. 3M Company, No. 1:13-cv-00843-LPS (D. Del.). In December 2013, Andover brought a lawsuit against 3M and its German subsidiary in Germany, alleging their infringement of the European patent. (Brafman Decl. ¶ 4 & Exs. 3–4.)

Of particular relevance to the present matter are allegations of infringement of the following patent claim:

> A cohesive product comprising a substrate and a synthetic water-based cohesive . . . , wherein the synthetic water-based cohesive comprises an inherently crystalline elastomer and at least one tackifying agent in an amount effective to disrupt the crystalline structure of the elastomer and maintain the elastomer in a partial polycrystalline state . . . ."

(Id. ¶ 2 & Ex. 1.) In support of its noninfringement defense in the German litigation, 3M submitted an expert report describing the results of crystallinity testing of the materials used in its products. (See id. ¶ 7 & Ex. 7 at 17.) Andover claims that the test results showing zero crystallinity "cannot be correct" because the product literature from all manufacturers of the type of material tested show that the material crystallizes (just at different rates).

(Andover's Pet., at 4.)  Accordingly, Andover seeks to conduct its own testing, but 3M has refused to disclose in the German litigation the specific materials used in its products.  (See id. at 6.)  Although 3M has disclosed that information in the litigation in the District of Delaware, the protective order in that case prevents Andover from using those documents in the German litigation.  (See id.)  Likewise, the district judge in that case denied Andover's request to use the "highly confidential information" in the German proceedings, finding that "both German law and U.S. law (see 28 U.S.C. Sec. 1782) provide other, appropriate mechanisms for [Andover] to seek the relief it is requesting."  (Brafman Decl. ¶ 11 & Ex. 11.)  On June 30, 2014, the day after the judge in the District of Delaware case issued his ruling, Andover filed a request with the German court for the same information, but the German court would not consider the issue prior to the September 5 hearing on the merits of the infringement claims.  (See Giebe Decl. [Doc. No. 18], ¶¶ 4, 6.)

On August 4, one month prior to the hearing in the German matter, Andover filed its § 1782 Petition with this Court.  Andover seeks an order compelling 3M to produce documents, for use in the German proceedings, that are responsive to the following requests:

1. Documents sufficient to show the ingredients in, formulation of, and method of making the products accused of infringement in Germany (Coban LF, Coban 2, and Coban 2 Lite); and

2. Documents referencing the crystallization or crystallinity properties of the polychloroprene used in the products accused of infringement.

(Andover's Pet., at 2.)  In its Petition, Andover argued that it satisfies the statutory requirements of § 1782 because 3M resides in this District, the requested discovery is for

3

use in Andover's pending lawsuit in Germany, and, as a party to the German litigation, Andover is an "interested person." (Id. at 7.) Andover also argued that the factor test enunciated by the U.S. Supreme Court in Intel Corp. v. Advanced Micro Devices, Inc. favors this Court's exercise of discretionary authority to compel the production of evidence under § 1782. (See id.) Specifically, Andover argued that: (1) although 3M is a party to the German litigation, Andover needs this Court's assistance to obtain the requested discovery because document requests in Germany are usually denied; (2) evidence obtained through U.S. discovery procedures can be introduced in German litigation; (3) Andover is not attempting to circumvent Germany's proof-gathering restrictions; and (4) the requested discovery is not unduly intrusive or burdensome because it is narrowly tailored and was already produced in the litigation in the District of Delaware. (See id. at 9–13.) Finally, Andover asserted that confidentiality concerns should not prevent the Court from ordering the discovery because there is no general public access to court documents in Germany, and because Andover is willing to request that the German court omit references to the confidential information from its decision. (See id. at 13.)

In opposition, 3M disputed only the application of the Intel factors, arguing that they weigh against the Court's exercise of discretion to grant Andover's discovery requests. (See 3M's Opp., at 6.) In particular, 3M argued that: (1) because 3M is a party to the German proceeding, the requested discovery is not inaccessible absent the use of § 1782; (2) Andover has made the same discovery request in the German litigation, and this petition is a means of circumventing the German court's judgment; and (3) the requested discovery is unduly intrusive because it consists of 3M's "most sensitive technical information," and

4

Germany lacks proper safeguards to protect against the disclosure of 3M's trade secrets to its competitors. (See id. at 6–13.) In addition, 3M argued that Andover can repeat the tests on the accused products because they are commercially available and, therefore, the requested discovery is not necessary to the resolution of the German action. (Id. at 13.) Finally, 3M requested that this action be transferred to the U.S. District Court for the District of Delaware if Andover's Petition is not denied. (Id. at 14.)

The parties appeared before the Magistrate Judge for a hearing on August 26, 2014. In his oral ruling, the Magistrate Judge noted that he had considered all of the Intel factors in reaching his decision. (Transcript of Aug. 26, 2014 Mot. Hr'g [Doc. No. 27], at 13:18–20.) He found that: (1) 3M is a party to the German proceeding, in which there is a motion pending for the requested discovery, and there is no indication that the German court cannot order that discovery; (2) Andover is attempting to circumvent the German court's proof-gathering restrictions, and the German court is more knowledgeable about the case and the relevance of the requested discovery; and (3) Andover is seeking highly confidential information belonging to 3M, and the risk of public disclosure could force 3M into conceding the German case in order to protect its products. (Id. at 13:21–15:24.) Based on these findings, the Magistrate Judge denied the Petition. (Id. at 15:25–16:3.)

A hearing on the merits of Andover's infringement claims was held in Germany on September 5, but the court indicated that it will not issue its decision on the document requests until November 7. (Andover's Objs. to Mag. J.'s Denial of Its Pet. [Doc. No. 28] ("Andover's Objs."), at 5.)

5

## III. DISCUSSION

### A. Standard of Review

As an initial matter, Andover contends that the Magistrate Judge's order denying its Petition should be reviewed de novo, rather than for clear error, because it was "the entire matter before the Court" rather than a nondispositive pretrial matter. (Andover's Objs., at 5.) Under that standard of review, the court reviews de novo those portions of the magistrate judge's decision to which an objection is made and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C); accord D. Minn. LR 72.2(b). In support of its position, Andover cites to several cases in which the courts applied a de novo standard of review to a magistrate judge's order in a slightly different scenario—an administrative subpoena enforcement action. (See Andover's Objs., at 5 (citing NLRB v. Frazier, 966 F.2d 812, 817–18 (3d Cir. 1992); EEOC v. Schwan's Home Serv., 707 F. Supp. 2d 980, 987 (D. Minn. 2010); Strong v. United States, 57 F. Supp. 2d 908, 913–14 (N.D. Cal. 1999)).) However, while there is no controlling authority in this Circuit, courts in other jurisdictions have applied a "clearly erroneous" standard of review to magistrate judges' rulings on petitions under 28 U.S.C. § 1782. See In the Matter of the Application of Leret, ___ F. Supp. 2d ___, 2014 WL 2803573, at *2 (D.D.C. 2014); In re Application of Duizendstraal, No. 3:95-MC-150-X, 1997 WL 195443, at *1 (N.D. Tex. Apr. 16, 1997)). In any event, this Court need not decide this threshold matter because the Magistrate Judge's decision was correct even under a de novo standard of review.

B.     **Petitioner's Objections**

Under 28 U.S.C. § 1782:

The district court of the district in which a person resides or is found <u>may</u> order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person . . . .

A person may not be compelled to . . . produce a document or other thing in violation of any legally applicable privilege.

28 U.S.C. § 1782(a) (emphasis added). Consistent with the permissive language of the statute, the U.S. Supreme Court held in <u>Intel Corp. v. Advanced Micro Devices, Inc.</u> that "§ 1782(a) authorizes, but does not require, a federal district court to provide judicial assistance to . . . 'interested person[s]' in proceedings abroad." 542 U.S. 241, 247 (2004). Accordingly, "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." <u>Id.</u> at 264 (citation omitted). Rather, the district court may consider the following factors in determining whether to exercise that authority: (1) the connection of the person from whom discovery is sought to the foreign proceeding; (2) the nature of the foreign tribunal, the character of the proceedings, and the receptivity of the foreign entity to assistance; (3) whether the request is an attempt to circumvent foreign restrictions or policies; and (4) whether the request is "unduly intrusive or burdensome." <u>Id.</u> at 264–65 (citations omitted).

Andover argues that the Magistrate Judge misapplied these factors and that they weigh in favor of granting the Petition. (<u>See</u> Andover's Objs., at 6–15.) Even so, during the October 3 hearing, Andover offered to narrow the scope of the information that it would file

with the German court. Andover represented that, while it needs information regarding the ingredients and the proportion of those ingredients used in 3M's products, Andover would only need to disclose to the German court the <u>identity</u> of one ingredient and would not disclose any information regarding the proportion of that ingredient used in 3M's products.

3M, on the other hand, argues that the Magistrate Judge's decision should be affirmed. (3M's Opp. to Andover's Objs. [Doc. No. 29] ("3M's Opp."), at 1.) Regarding Andover's offer to narrow the scope of the disclosed information, 3M argued that even the identity of that one ingredient is trade secret information, the disclosure of which would cause 3M irreparable harm.

This Court agrees with Defendant—after conducting a <u>de novo</u> review, the Court finds that the <u>Intel</u> factors weigh against granting Andover's Petition.

### 1. Connection to the foreign proceeding

The first consideration in ruling on a § 1782(a) petition is the connection of the person from whom discovery is sought to the foreign proceeding. See <u>Intel Corp.</u>, 542 U.S. at 264. "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." <u>Id.</u> This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence," whereas "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach [and] their evidence . . . may be unobtainable absent § 1782(a) aid." <u>Id.</u>

Andover argues that requests for production of documents are rarely granted by German courts. (Andover's Objs., at 8 (citing Weber Decl. [Doc. No. 23], ¶ 3).) Therefore, Andover asserts, U.S. courts generally provide assistance, even when it is sought from a party to a German proceeding. (See id. at 8.) Contrary to Andover's assertions, 3M contends that the relevant case law counsels against compelling discovery from a party to a German proceeding. (See 3M's Opp., at 5–6.) In addition, 3M asserts that Andover is seeking the same discovery in Germany and that the German court stated that it would order the discovery if it determined that the discovery is necessary. (Id. at 5 (citing Second Giebe Decl. [Doc. No. 30], ¶ 6).)

The Court is not persuaded by Andover's arguments. The U.S. Supreme Court has explicitly stated that the need for § 1782(a) assistance is less when evidence is sought from a party to a foreign proceeding than when it is sought from a non-party because the foreign tribunal can order a party to produce the evidence. Here, 3M is a party to the German proceedings, and the German court has already indicated that it will grant Andover's discovery request should it find that the discovery is necessary to resolve the case. As noted by the district court in Via Vadis Controlling GmbH v. Skype, Inc., the fact that Germany's discovery laws may not be as broad as those in the United States has no bearing on whether an entity is a party to the foreign proceeding under the first Intel factor. No. Civ.A. 12-MC-193-RGA, 2013 WL 646236, at *2 (D. Del. Feb. 21, 2013).

In addition, the cases cited by Andover are readily distinguishable from the present facts. For example, the district court in Cryolife, Inc. v. Tenaxis Medical, Inc. noted that the first Intel factor was neutral where the German court could not compel

9

discovery from the respondent, which—although a party to the German proceeding—was a foreign national. No. C08-05124 (HRL), 2009 WL 88348, at *2 (N.D. Cal. Jan. 13, 2009). The petition granted in In re Application of Bayer Healthcare LLC was done on an ex parte basis, and thus the court merely recited the petitioner's allegations and stated that its decision was without prejudice to the respondent moving to quash the subpoena. No. C 14-80138, 2014 WL 3805807, at *2 (N.D. Cal. May 14, 2014). Finally, in Kulzer v. Esschem, Inc., the Third Circuit's description of a "textbook predicate for a successful § 1782 petition" included the fact that discovery was unavailable in Germany because the respondent was not a party to the German proceeding. 390 Fed. App'x 88, 92 (3d Cir. 2010). Because 3M is a party to the German proceeding, and because the German court has indicated that it will exercise its jurisdiction to compel discovery of the requested documents if it deems them necessary, the first Intel factor weighs against granting Andover's Petition.

### 2. Nature, character, and receptivity of the foreign entity

The second consideration is "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." Intel Corp., 542 U.S. at 264 (citation omitted). The question under this factor is not whether the foreign tribunal has discovery laws that would permit discovery of the requested materials, but rather whether the foreign tribunal would consider evidence obtained through a § 1782 petition. See In re Chevron Corp., 633 F.3d 153, 163 (3d Cir. 2011). Thus, "[r]equests for discovery

10

have been denied where the foreign tribunal expressly states that it does not need or want the information sought." Cryolife, Inc., 2009 WL 88348, at *3 (collecting cases).

Andover argues that it is undisputed that the German court in this case would accept the discovery it seeks to obtain through its Petition. (Andover's Objs., at 9.) In support of its argument, Andover cites to the declaration of its German counsel, who states that the evidence would be "fully admissible." (Id. (citing Weber Decl. ¶ 4).) 3M presents no evidence to the contrary.[1] However, although the German court did not expressly state at the September 5 hearing that it does not need or want the information sought, it deferred its ruling on the discovery request in order to determine whether the evidence is necessary. Accordingly, it is not clear that the German court will consider the evidence even if Andover's Petition is granted. Accordingly, this factor is neutral.

### 3.   Circumvention of foreign restrictions

The third consideration is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." Intel Corp., 542 U.S. at 265 (citation omitted). Andover argues that this factor supports granting its Petition where, as here, the foreign tribunal provides for more limited discovery than is available in the United States. (See Andover's Objs., at 11.) Andover also asserts that, at the September 5 hearing, "the German Court indicated it was interested in obtaining evidence regarding the identity of 3M's raw materials,

---

[1]   3M combined its discussion of the second and third Intel factors. (See 3M's Objs., at 7–10.) Although 3M argues that both factors weigh in favor of denying Andover's Petition, 3M does not clearly address this second factor. (See id.)

including via discovery obtained in the United States." (Id.) Moreover, Andover argues, it is not necessary for Andover to exhaust its discovery options in Germany before it can obtain relief under § 1782. (See id. at 13.)

In response, 3M argues that granting Andover's Petition would improperly circumvent the German court's judgment if the German court were to ultimately deny Andover's discovery request. (3M's Opp., at 7.) 3M also asserts that this Court should not usurp the power of the German court, which is already considering Andover's request, to determine whether the discovery is necessary. (See id. at 8.) And, according to 3M, the German court only inquired as to the status of the present matter in order to determine whether the discovery request it was considering was moot. (Id. at 8 n.1 (citing Second Giebe Decl. ¶ 7).)

While it may be true that the unavailability of the requested discovery under a foreign jurisdiction's rules does not render a § 1782 petition a circumvention of those rules, and that litigants need not seek the requested discovery in the foreign tribunal before seeking assistance under § 1782, see In the Matter of the Application of Euromepa S.A., 51 F.3d 1095, 1098 (2d Cir. 1995), "§ 1782 was not intended . . . as a vehicle to avoid or appeal an unfavorable discovery decision by the [foreign tribunal]," In re Application of Microsoft Corp., 428 F. Supp. 2d 188, 196 (S.D.N.Y. 2006). Because the same discovery request currently is pending before the German court, it appears that Andover is simply attempting to avoid or preempt an unfavorable decision by that court. Therefore, this third Intel factor weighs against granting Andover's Petition or is, at most, neutral.

### 4. Undue intrusiveness or burden

Finally, the U.S. Supreme Court has stated that "unduly intrusive or burdensome requests may be rejected or trimmed." Intel Corp., 542 U.S. at 265 (citation omitted). Andover argues that courts reject the argument that discovery under § 1782 should be denied based on confidentiality concerns because a protective order can be used to address those concerns. (Andover's Objs., at 14.) Andover states that it is amenable to limiting use of the requested discovery to the German action; to restricting disclosure of the information to counsel, experts, and the court; and to requesting that the court maintain the confidentiality of the information. (Id.) As noted above, Andover has further agreed to limit its disclosure of the requested information to solely the identity of one ingredient used in 3M's products, and not the identity of any other ingredient or formulation. Andover also asserts that court files in German patent litigation are only available to third parties if they can prove that they have "a legitimate legal interest in the matter"—i.e., that they are "directly affected by the Court's decision, or the decision directly relates to [their] own litigation." (Id. (citing Weber Decl. ¶ 7).)

To the contrary, 3M argues that this factor weighs "heavily" against Andover because there is no dispute that the requested documents contain 3M's trade secrets or that disclosure of those trade secrets—including the identity of just one ingredient—would irreparably harm 3M.[2] (See 3M's Opp., at 10.) 3M argues that a protective order in this

---

[2]   3M's Global Business Director submitted a sworn declaration in opposition to Andover's Petition, in which he states that disclosure of the requested information—including the identity of the individual ingredients of 3M's products—would cause 3M irreparable harm. (See Ashton Decl. [Doc. No. 19], ¶¶ 5–9.) There is no evidence to the

case would not mitigate 3M's confidentiality concerns, and that Andover's characterization of the protections available in Germany is incorrect.  (See id.)  As for the latter point, 3M asserts that there is no common mechanism by which access to a case file can be limited to a party's attorneys, that 3M's competitors who receive a warning letter regarding Andover's patent may be considered to be interested parties for purposes of inspecting the court file, and that German courts do not frequently grant requests to exclude confidential information from their decisions.  (See id. at 10–11 (citing Giebe Decl. ¶¶ 7–10).)  Thus, 3M argues, "[a]greement by Andover cannot mitigate the risk of disclosure."  (Id. at 12.)

This Court finds that 3M's concerns are valid and that Andover has not presented evidence that those concerns will be adequately addressed.  Andover seeks disclosure of highly confidential information—namely, the ingredients in, formulation of, and method of making, the accused products.  Even if the disclosure to the German court is limited as proposed by Andover, the availability of the measures by which Andover proposes to protect that trade secret information is anything but certain.  Moreover, the German court has not yet determined whether this information is even necessary for Andover to maintain its claims.  In light of the highly sensitive nature of the requested discovery, and the lack of certainty that its confidentiality can be maintained, this Court finds that the fourth Intel factor weighs heavily against granting the Petition.

Based on the foregoing, the Court finds that—on balance—the Intel factors weigh against granting Andover's Petition.  Accordingly, although this Court may have authority

---

contrary.

to grant the Petition, it will decline to exercise its discretion to order discovery that the German court may soon determine it does not need or want. Andover's objections to the Magistrate Judge's Order are overruled, and the Order is affirmed.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Andover Healthcare, Inc.'s Objections [Doc. No. 28] to the Magistrate Judge's August 26, 2014 Order are **OVERRULED**;

2. The Magistrate Judge's August 26, 2014 Order [Doc. No. 25] is **AFFIRMED**; and

3. Andover Healthcare, Inc.'s Petition for Expedited Discovery Under 28 U.S.C. § 1782 is **DENIED**.

Dated:  October 6, 2014                    s/Susan Richard Nelson
                                           SUSAN RICHARD NELSON
                                           United States District Judge